## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| DELAURENCE ROBINSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 13-1282, 15-1147, 17-1324 |
| ) | |
| DALE SCROGUM, *et al.*, ) | |
| ) | |
| Defendants. ) | |

## <u>ORDER</u>

On January 12, 2018, the Court entered an Order to Show Cause as to why Plaintiff Robinson's three pending lawsuits should not be dismissed with prejudice as a sanction for intentionally misrepresenting his financial status to the Court. Doc. 67. The underlying facts are fully set forth in the Court's prior order, but are briefly summarized below.

Robinson's misrepresentations to the Court began in 2013, when he failed to disclose that he received $1,000 four months prior to filing his first lawsuit. Docs. 2, 6. Robinson also misrepresented the amount of money he received in the last 12 months when he filed a Motion for Leave to Appeal in forma pauperis on September 21, 2016. Doc. 51. In that Motion, Robinson failed to disclose that he received $1,230 from Linda Hoskins on April 30, 2016. He also represented to the Court that he did not expect major changes to his monthly income in the next 12 months, but on September 28, 2016, one day after his Motion for Leave to Appeal in forma pauperis was denied by this Court on the basis that the appeal was not taken in good faith, Linda Hoskins sent Robinson $5,000.

Robinson also misrepresented his ability to pay in his Motion for Leave to Appeal in forma pauperis in *Robinson v. Jhassen et al.*, Case No. 15-1147, Doc. 67 (C.D. Ill.). There, he represented that he received an average of $75 each of the previous 12 months for "state pay,"

but expected only $10 for the next month. Notably absent from Robinson's accounting was any mention of the $5,000 he received from Linda Hoskins less than 12 months before. Similarly, Robinson misrepresented the amount of money he received in the previous year when he filed a Motion to Proceed in forma pauperis in *Robinson v. Humbert et al*., Case No. 17-1324, Doc. 3 (C.D. Ill.). Again, Robinson made no mention of the $5,000 deposit he received less than a year before.

Robinson responded to the Court's order in a filing dated February 20, 2018. Therein, he argues that the inaccurate representations on his various IFP forms were caused by the Illinois Department of Corrections' failure to provide him with copies of his trust fund ledger. Doc. 69, at 3. In Robinson's words, "IDOC has a history of not providing ledgers to me that cause me to put a guestimate that is not right." *Id*. "[A]s far as not mentioning $5,000.00 is all contributed to no access to a trust fund ledger or transfers and this is attributed to IDOC." *Id*. at 3–4.

As recounted in the Court's prior order, the Seventh Circuit in *Kennedy v. Huibregtse* made the following observation:

> Although the district judge might have granted the plaintiff's *in forma pauperis* petition even if he'd disclosed his separate trust account, hiding assets is not a permissible alternative to seeking the judge's assistance. An applicant has to tell the truth, then argue to the judge why seemingly adverse facts (such as the trust fund in this case) are not dispositive. A litigant can't say, "I know how the judge *should* rule, so I'm entitled to conceal material information from him."

*Kennedy v. Huibregtse*, 831 F.3d 441, 443 (7th Cir. 2016). Like the plaintiff in *Kennedy*, Robinson was required to be truthful when disclosing assets to the court. He was not, and his claim of inadvertent error is implausible. Robinson did not need his trust fund ledger to know he had enough money to make commissary purchases totaling $225 on October 6, 2016; he knew he had enough money to write a $1,000 check to a lawyer on October 28, 2016; he knew he had enough money to spend $139 at the commissary on November 3, 2016; he knew he had enough

money to pay $455 in paralegal fees on November 17, 2016; he knew he had enough money to

spend $255 at the commissary on November 23, 2016; he knew he had enough money to pay the

$505 appellate filing fee on November 28, 2016; he knew he had enough money to spend $255 at

the commissary on December 8, 2016. See Doc. 67-1, at 4–5. The list goes on and on.

Stated differently, $5,000 is not something a person claiming to be indigent forgets about.

It is not change under the couch cushion or a $5 bill left in a coat pocket. Rather, $5,000 is 12.5

district court filing fees, or almost 10 appellate filing fees. $5,000 is a sum that only the

wealthiest of individuals have the luxury of forgetting about. And while $5,000 might not be

enough to make ends meet for those who are not incarcerated, "the prison provides prisoners

with food, clothing, shelter, medical care, and protection (albeit often spotty) against criminal

assault, making the plaintiff's entire [$5,000+] available to finance his lawsuit." *Kennedy*, 831

F.3d at 443.

Robinson was not truthful in his various in forma pauperis petitions, which is itself

grounds for sanctions including dismissal with prejudice. *Kennedy v. Huibregtse*, 831 F.3d 441,

443 (7th Cir. 2016) ("Although the district judge might have granted the plaintiff's *in forma

pauperis* petition even if he'd disclosed his separate trust account, hiding assets is not a

permissible alternative to seeking the judge's assistance."). Moreover, even if Robinson had

disclosed the $5,000, "[n]otwithstanding any filing fee, or any portion thereof, that may have

been paid, the court shall dismiss the case at any time if the court determines that … the

allegation of poverty is untrue." 28 U.S.C. § 1915(e)(2). Because Robinson intentionally

misrepresented his financial status in each of his three cases—*Robinson v. Scrogum et al.*, Case

No. 13-1282 (C.D. Ill.), *Robinson v. Jhassen et al.*, Case No. 15-1147, (C.D. Ill.), *Robinson v.

Humbert et al.*, Case No. 17-1324,  (C.D. Ill.)—the Court finds that the appropriate sanction is

dismissal with prejudice in each case. Robinson remains responsible for paying the filing fees, which the Clerk is directed to collect using the enforcement mechanism in 28 U.S.C. § 1915(b). *Newlin v. Helman*, 123 F.3d 429, 433 (7th Cir. 1997).

One final issue bears discussion. In his Response to the Order to Show Cause, Robinson states "Plaintiff also urges the Honorable Court to recognize and remember that it specifically sent a court order to IDOC to withdraw 20% from Plaintiff's account when account exceeds $10.00 and this is from any income, so IDOC is at a fault for not honoring the court order." Doc. 69, at 5. After reviewing Robinson's trust fund ledgers (as well as those of other inmates throughout the IDOC), Robinson appears to be absolutely correct. Upon receipt of this order, the IDOC should take notice that the Court is undertaking a review of other inmate trust fund ledgers from institutions throughout this District, and expects each institution to fully comply with court orders. However, the IDOC's compliance or lack thereof with this Court's orders is a separate issue from Robinson's duty to be truthful before the Court, and therefore does not alter the above analysis.

## CONCLUSION

For the reasons set forth above, Robinson's three cases—No. 13-1282, 15-1147, and 17-1324—are dismissed with prejudice. Robinson remains responsible for paying the filing fees, which the Clerk is directed to collect using the enforcement mechanism in 28 U.S.C. § 1915(b). *Newlin v. Helman*, 123 F.3d 429, 433 (7th Cir. 1997). The Clerk is further directed to forward a copy of this order to the trust fund department at Robinson's place of incarceration.

Signed on this 27th day of February, 2018.

s/ James E. Shadid
James E. Shadid
Chief United States District Judge

4